**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMES E. ZALEWSKI, DRAFTICS, LTD.,

                                        Plaintiff,

        - v -                                                     Civ. No. 1:11-CV-1159
                                                                          (GLS/RFT)

SHELROC HOMES, LLC,
CAPITAL FRAMING, INC., and
JOSEPH M. CLARK,

                                        Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## DECISION and ORDER

        Presently before this Court is Defendants' Motion to Disqualify Lee Palmateer,

Esq., as Plaintiffs' Counsel.  Dkt. No. 20, Defs.' Mot. to Disqualify, dated Nov. 18,

2011.  The Plaintiffs vigorously oppose Defendants' Motion,  Dkt. No. 25, to which

the Defendants have filed a Reply thereto, Dkt. No. 26.  For the reasons stated below,

this Court finds that an evidentiary hearing is in order.

## I.  BACKGROUND

        The Court presumes the parties' familiarity with the facts and the issues of this

litigation and, more particularly, the gravamen of this Motion.  Nonetheless, for the

limited purpose of this Decision and Order, the Court will state an abridged version

of the facts.

**A.  Case No. 1:10-CV-876**

On July 16, 2010, the Plaintiffs initiated a copyright infringement action, pursuant to 17 U.S.C. § 501, *et seq.*, against approximately eighty parties, including the Defendants named in this action.  Case No. 1:10-CV-876, Dkt. No. 1, Compl.  The basic gist of that infringement action alleges that Plaintiffs are builders and designers specializing in architectural and flooring planning designs of residential homes.  They accuse the Defendants, as well as numerous others, of violating their exclusive copyrights in the architectural designs of resident homes, i.e., designated as DRA 216a and DRA 217, and accordingly these numerous defendants' conduct constitutes an infringement of those copyrights.  At the time Plaintiffs commenced this action, they were represented by Nancy Baum Delain, Esq., while the Defendants' insurer, Scottsdale Insurance Company, undertook their defense, and provided representation through the Goldberg Segalla Law Firm, Christopher J. Belter, Esq., of Counsel.

As that litigation progressed over the following several months, Plaintiffs amended that complaint twice in order to reduce the number of parties and to narrow the allegations.  *See* Dkt. Nos. 11, Am. Compl., dated Aug. 18, 2010, 60, Second Am. Compl., dated Oct. 27, 2010.  Because of the more narrowly defined allegations in the second amended complaint, the Defendants' insurer withdrew its defense and Defendants' Counsel moved to withdraw.  *See* Dkt. No. 95, Sealed Mot. to Withdraw,

dated Jan. 13, 2011.  The Court granted the withdrawal motion and gave the Defendants thirty days to retain new counsel.  Dkt. No. 99, Sealed Order, dated Feb. 3, 2011.

### B.  Lee Palmateer, Esq.

With the assistance of Philip Miller, Esq., the Defendants embarked upon securing new counsel.  Several attorneys were contacted but only two were interviewed.  Attorney Palmateer was interviewed first by Defendant Joseph Clark and Attorney Miller on February 16, 2011, at Miller's law office.  Again for the purpose of this Motion, the Court will sparingly detail the salient facts in order to frame the issues.  Clark and Miller aver that they met with Palmateer for nearly ninety minutes in which they shared confidential and privileged information and discussed

> a detailed analysis of the overall case including the subject drawings Mr. Zalewski was using to support his claims and the architectural drawings of the allegedly infringing home built by Shelroc and Capital Framing. Mr. Clark walked Mr. Palmateer through various aspects of both drawings, comparing and contrasting elements of both.  Mr. Palmateer was actively involved in the discussion, asking questions and offering his opinions and advice.

Case No. 1:11-CV-1159, Dkt. No. 20-4, Philip Miller, Esq., Decl., dated Nov. 15, 2011, at ¶ 17.

Clark and Miller represent that the candid conversations were not one-sided but that Palmateer offered his opinion and advice on a range of related subject matters.  *Id*. at ¶ 17; Dkt. No. 20-3, Joseph M. Clark Decl., dated Nov. 16, 2011, at ¶ 9.  Additionally,

Clark and Miller declare that their discussion with Palmateer included terms such as what Defendants might be willing to offer to settle the litigation, including amounts. Miller Decl., at ¶ 19; Clark Decl., at ¶ 3.[1]  Contrariwise, Palmateer refutes that either Clark or Miller shared privileged communication with him and he vehemently denies that the Defendants shared terms of settlement with him: "Our discussions did not even remotely approach 'detailed,' and neither Messrs. Clark nor Miller disclosed confidential information to me. . . . While they inquired as to my thoughts on settlement and I offered preliminary observations, they did not disclose to me their strategy or amenability to settlement."  Dkt. No. 25-3, Lee Palmatter, Esq., Decl., dated Dec. 9, 2011, at ¶¶ 12-13.  Notwithstanding Clark's and Miller's extensive meeting with Palmateer, they decided not to retain him and hired, instead, the law firm of Harris Beach, James R. Muldoon, Esq. of Counsel.  Miller Decl., at ¶ 22.

On August 2, 2011, the Honorable Gary L. Sharpe, now Chief District Court Judge, issued a memorandum-decision and order dismissing the second amended complaint for failing to meet the pleading requirements under FED. R. CIV. P. 8, granting Plaintiffs leave to file a third amended complaint, and extending to the defendants an opportunity to renew or supplement their motions should a third

---

[1] Out of an abundance of caution, the Defendants did not initially shared with the Court the actual conversation between Clark, Miller, and Palmateer for fear that doing so could inadvertently waive the attorney-client privilege by doing so.  Case No. 1:11-CV-1159, Dkt. No. 20-3, Joseph M. Clark Decl., dated Nov. 16, 2011, at ¶ 6.

amended complaint be filed timely.  Case No. 1:10-CV-876, Dkt. No. 133, Mem.-Dec. & Order.  Approximately two weeks thereafter, on August 18, 2011, Attorney Delain filed a letter-motion seeking to withdraw as Plaintiffs' Counsel, Dkt. No. 135, and Attorney Palmateer filed a notice of appearance on behalf of the Plaintiffs, Dkt. No. 134.  *See also* Dkt. No. 136, Order, dated Aug. 19, 2011.  Until this point, Palmateer had not represented the Plaintiffs on any matter or in any manner.

On September 1, 2011, Plaintiffs filed the third amended complaint wherein the Defendants above, among others, remained as parties.  Dkt. No. 138, Third Am. Compl., Count VI, ¶¶ 169-92.  The Defendants complained that this third amended complaint contained new factual allegations that described information Defendants disclosed in confidence to Palmateer.  According to the Defendants, Muldoon contacted Palmateer about this conflict and may have asked him to withdraw as counsel.  Rather than withdraw from that litigation, on September 27, 2011, Plaintiffs filed a voluntary dismissal without prejudice against our Defendants, Dkt. No. 143, which was granted by Judge Sharpe, Dkt. No. 144; concurrently, Plaintiffs commenced our current action.[2]

### C.  Case No. 1:11-CV-1159

---

[2]   Shortly thereafter, several dispositive motions were filed against the third amended complaint by the remaining defendants in the original action.  Case No. 1:10-cv-876, Dkt. Nos. 146, 149, 151, 156, 158-60.

The allegations rendered against the Defendants in the prior case's third amended complaint are repeated nearly verbatim in our Complaint.  Case No. 1:11-CV-1159, Dkt. No. 1, Compl., dated Sept. 27, 2011.  Unsurprisingly, the Defendants contend that the new allegations are based upon information Defendants discussed in confidence with Palmateer during "their prospective attorney-client relationship."  In response to the Complaint, Defendants filed an Answer with Counterclaim.  Dkt. No. 11, Answer, dated Oct. 28, 2011.  After holding a Conference on November 8, 2011, this Court issued an Order granting Defendants permission to file this Motion to Disqualify and further stayed all proceedings pending a decision on the Motion.[3]  Dkt. No. 18, Text Order, dated Nov. 8, 2011.

## II.  APPLICABLE LAW

Defendants' central theme in filing this Motion is that they had entered into a prospective attorney-client relationship with Palmateer when they discussed details about their defense in the earlier, related lawsuit initiated by the Plaintiffs. As noted above, the Defendants assert that Palmateer "now represents Plaintiffs on virtually identical claims against the Defendants."  Dkt. No. 20-1, Defs.' Mem. of Law at p. 2.  Defendants argue that Palmateer should be disqualified from representing the

---

[3] In Case No. 1:10-CV-876, on December 22, 2011, Judge Sharpe's Chamber issued a Text Notice "stay[ing] its decision in light of the pending motion to disqualify plaintiffs counsel . . . in the related case, *Zalewski v. Shelroc Homes, LLC*, 11-cv-1159."

Plaintiffs based upon his receipt of privileged, confidential communication from them during an attorney-client relationship, albeit brief, that occurred prior to the commencement of the present lawsuit. They exclaim that Palmateer's possession of this sensitive and relevant information, which was shared with him in confidence, will visit substantial harm upon them and deliver an unfair advantage to Plaintiffs. Although Palmateer agrees that he met with Clark and Miller and that a conversation ensued regarding outstanding litigation, he vehemently disputes the content and ambit of those discussions. In his view, no confidential information was conveyed to him, and the information that was shared would not cause substantial harm to the Defendants.

A motion to disqualify an attorney is within the broad discretion of the court. *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994); *Cheng v. GAF Corp.*, 631 F.2d 1052, 1055 (2d Cir.), (noting that a court's ruling will not be overturned absent an abuse of discretion determination), *judgment vacated on other grounds*, 450 U.S. 903 (1981). Since disqualification may impose a serious impact on a party's right to an attorney of his choice, it should only be imposed when continued representation may pose a significant risk of taint upon the trial. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981). The objective of a disqualification rule is to "preserve the integrity of the adversary process." *In re Agent Orange Prod. Liab. Litig.*, 800

F.2d 14, 18 (2d Cir. 1986) (quoting *Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).  Generally speaking, motions to disqualify are viewed with disfavor and the party seeking disqualification must meet a high standard of proof before disqualification will be granted.  *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (observing that there is "a particularly trenchant reason for requiring a high standard of proof"); *Human Elec., Inc. v. Emerson Radio Corp.*, 375 F. Supp. 2d 102, 105 (N.D.N.Y. 2004); *United States v. Salvagno*, 2003 WL 21939629, at *5 (N.D.N.Y. Mar. 4, 2003).

In deciding a motion to disqualify, courts often seek guidance from the American Bar Association (ABA) and state disciplinary rules, though "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification."  *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132-33 (2d Cir. 2005) (*citing Bd. of Educ. v. Nyquist*, 590 F.2d at 1246).  We must always remember that the standard of professional conduct in federal courts is a matter of federal law.  *Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 305 (E.D.N.Y. 2005) (citing *In re Snyder*, 472 U.S. 634, 645 n. 6 (1985) ("Federal courts admit and suspend attorneys as an exercise of their inherent power; the standards imposed are a matter of federal law.").  Accordingly, federal courts are guided but not bound by the State's Code of Professional Conduct, and yet

courts look to the Code, and in some instances even seek guidance from state common law, in determining disqualification motions.  In that respect, the Court notes that New York adopted the Model Rules of Professional Conduct, effective April 1, 2009.  The Model Rules, in most respects, do not differ significantly from the previous standards set forth in the Model Code of Professional Responsibility.[4]

New York Code of Professional Conduct Rule 1.18 provides in pertinent part the following:

> a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a "prospective client." (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.  (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). . . . (d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if: (1) both the affected client and the prospective client have given informed consent, confirmed in writing; or (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client . . .

N.Y. COMP. CODES R. & REGS. tit. 22, §1200.

Defendants assert that at the time they shared confidential information with

---

[4]  For a comparison of the two standards, see Roy Simon, Comparing the New NY Rules of Professional Conduct To the NY Code of Professional Responsibility, available at www.nysba.org.

Palmateer concerning the facts and issues prevalent in the earlier, related litigation, they were a prospective client of Palmateer.  Because of their legal status as a prospective client, as well as noting further that they do not give their consent for Palmateer to serve as Plaintiffs' Counsel, Defendants contend that Palmateer should not be allowed to continue the representation of a client with interests materially adverse to those of the Defendants in the same or substantially related matter because he received information from them that could be significantly harmful to them. Palmateer denies that the Defendants provided him with confidential information and, moreover, states that the information provided would not cause Defendants any harm or create an unfair advantage for the Plaintiffs.

When this Motion and Plaintiffs' Opposition thereto were initially filed with the Court, the parties revealed only broad elements of their discussion, which made it difficult for the Court to discern whether indeed the discussion would constitute an attorney-client communication and whether revelation of that discussion would be materially adverse to the Defendants and cause them significant harm. *See supra* note 1.  Hoping that greater disclosure of the content of the February 16, 2011 discussion would aid this Court in better comprehending the actual content and nature of their dialogue, the Court directed the parties to file under seal the actual conversation. *See* Dkt. Nos. 31-36.

*-10-*

Notwithstanding the disclosure, Palmateer still challenges the confidential nature of the conversation, disputes the accuracy of Defendants' version of the discussion, and minimizes the materially adverse impact and substantial harm to the Defendants by interjecting other facts and factors into the equation.  If Defendants' version of the events and conversation is true, particularly as it may relate to the discussing of settlement strategy, it is very likely that the Defendants would prevail on the Motion.  Conversely, if Palmateer's rendering of the discussion and Plaintiffs' interpretation of its significance in light of Rule 1.18 is accepted, it may appear that Palmateer could triumph over the Motion.  Nonetheless, both versions cannot be true.

The parties' significantly conflicting views on what actually occurred and what was said exposes a troubling divergence of fact and opinion that cannot be overcome without further fact finding.  *See Miness v. Ahuja*, 713 F. Supp. 2d 161, 166 (E.D.N.Y. 2010).  Accordingly, the parties are directed to file dates and times that they may be available to participate in a telephone conference for the purpose of establishing an evidentiary hearing concerning the Defendants' Motion to Disqualify.  The Court anticipates the parties' prompt attention to this Decision and Order.

**IT IS SO ORDERED**.

January 31, 2012
Albany, New York

*-11-*

Randolph F. Treece
U.S. Magistrate Judge