**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMES E. ZALEWSKI and DRAFTICS, LTD.,

                              Plaintiff,

            - v -                                    Civ. No. 1:11-CV-1159
                                                            (GLS/RFT)

SHELROC HOMES, LLC;
CAPITAL FRAMING, INC.; and
JOSEPH M. CLARK,

                              Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**<u>MEMORANDUM-DECISION and ORDER</u>**

        Presently before this Court is Defendants' Motion to Disqualify Lee Palmateer,

Esq., as Plaintiffs' Counsel.  Dkt. No. 20, Defs.' Mot. to Disqualify, dated Nov. 18,

2011.[1]  The Plaintiffs vigorously oppose Defendants' Motion,  Dkt. No. 25,[2] to which

the Defendants have filed a Reply thereto, Dkt. No. 26.[3]

        A disqualification motion is a "fact-intensive endeavor." *Miness v. Ahuja*, 762

F. Supp. 2d 465, 478 (E.D.N.Y. 2010) (citing, *inter alia*, *Bd. of Educ. of City of New*

---

[1] The Defendants' Motion is comprised of the following: Dkt. No. 20, Notice of Mot.; 20-1, Defs.' Mem. of Law, dated Nov. 18, 2011; 20-2, Unreported Cases; 20-3, Joseph M. Clark Decl., dated Nov. 16, 2011; 20-4, Philip Miller, Esq., Decl., dated Nov. 15, 2011; 20-5 to 20-20, Exs.; 20-21, James R. Muldoon, Esq., Decl., dated Nov. 18, 2011; and, 20-22 to 20-25, Exs.

[2] Plaintiffs' Opposition to the Motion is comprised of the following: Dkt. No. 25, Pls.' Mem. of Law, dated Dec. 9, 2011; 25-1, James E. Zalewski Decl., dated Dec. 9, 2011; 25-2, Exs.; 25-3, Lee Palmateer, Esq., Decl., dated Dec. 9, 2011; and, 25-4 to 25-10, Exs.

[3] The Defendants' Reply is comprised of a Memorandum of Law, dated December 16, 2011, and unreported cases.  Dkt. No. 26.

*York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979), admonishing that a decision to disqualify "can be reached only afer a painstaking analysis of the facts and precise application of precedent"). After reviewing the extensive submissions[4] by both parties, and performing a painstaking critique of those submissions, this Court found substantial disagreement between the parties as to the core facts and events, and concluded, "that [the difference] cannot be overcome without further fact finding." Dkt. No. 37, Dec. & Order, dated Jan. 31, 2012, at p. 11.  Accordingly, the Court directed that an evidentiary hearing should be held.  *Id.* at p. 12.

After hearing from the parties during a Telephone Conference which was held on February 2, 2012, and after further research, the Court retreated from holding an evidentiary hearing and, in its stead, oral arguments were heard on February 15, 2012. Upon the conclusion of that Hearing, the Court reserved its decision and advised the parties that it would revisit the entire record.

## I. BACKGROUND

_____

[4]   Those submissions included affidavits revealing the full extent of the conversations between Attorney Lee Palmateer, Defendant Joseph Clark, and Attorney Philip Miller.  The parties' original submissions addressed their conversations with broad strokes making it difficult to appreciate what may constitute privileged communications.  In order for the Court to evaluate the nature of the communications between these parties, the Court directed Clark and/or Miller to provide an additional affidavit revealing the purported privileged communication, which would be filed under seal.  Dkt. No. 30, Text Order, dated Jan. 5, 2012.  Attorney Palmateer was given an opportunity to respond to this later submission.  *Id.*  These submission were, in fact, filed under seal. *See* Dkt. Nos. 31-36.  Although the Court reviewed these sealed submissions, for purposes of this Memorandum-Decision and Order, it will not discuss the specific content of that communication as unveiled in those sealed documents.

## A.  Case No. 1:10-CV-876
### *Zalewski et al. v. T.P. Builders, Inc., et al.*

On July 16, 2010, the Plaintiffs initiated a copyright infringement action, pursuant to 17 U.S.C. § 501, *et seq.*, against approximately eighty parties, including the Defendants named in this action.  Case No. 1:10-CV-876, Dkt. No. 1, compl.  The basic gist of that infringement action alleges that Plaintiffs are builders and designers specializing in architectural and floor planning designs of residential homes.  They accuse the Defendants, as well as numerous others, of violating their exclusive copyrights in the architectural designs of residential and colonial styles homes.  More specifically, this action alleges that our Defendants infringed upon Plaintiffs' copyrighted drawings designated as DRA217 when they constructed a house at 4186 Albany Street, Albany, New York.  *Id.* at ¶¶ 105-110(r), & 111-129 (Third Cause of Action).  At the time Plaintiffs commenced this action, they were represented by Nancy Baum Delain, Esq., while the Defendants' insurer, Scottsdale Insurance Company, undertook their defense and provided representation through the Goldberg Segalla Law Firm, Christopher J. Belter, Esq., of Counsel.

As that litigation progressed over the following several months, stipulations of dismissal with prejudice were submitted to the Court which were converted into orders, sizably reducing the number of defendants to exclusively builders.  *See* Dkt. Nos. 45-62, 64, 67, & 68.  Further, Plaintiffs amended their complaint twice in order

to narrow the allegations.  *See* Dkt. Nos. 11, am. compl., dated Aug. 18, 2010, 60, second am. compl., dated Oct. 27, 2010 (Count Four, paragraphs 80-98, specifically refer to our Defendants).  Because of the more narrowly defined allegations in the second amended complaint, the Defendants' insurer withdrew its defense and moved to withdraw.  *See* Dkt. No. 95, sealed mot. to withdraw, dated Jan. 13, 2011.  The Court granted the withdrawal motion and gave the Defendants thirty days to retain new counsel.  Dkt. No. 99, sealed order, dated Feb. 3, 2011.

## B.  Lee Palmateer, Esq.

With the assistance of Philip Miller, Esq., the Defendants embarked upon securing new counsel.  *See generally* Case No. 1:11-CV-1159, Dkt. Nos. 20-3, Joseph M. Clark's Decl., dated Nov. 16, 2011, & 20-4, Philip Miller, Esq., Decl., dated Nov. 15, 2011.  Several attorneys were contacted but only two were interviewed.  Attorney Palmateer was interviewed first by Defendant Joseph Clark and Attorney Miller on February 16, 2011, at Miller's law office.  Prior to the Palmateer meeting, Attorney Miller conversed with Attorney Palmateer over the phone, and, in order for Palmateer to be prepared for their meeting, shared with him the case docket number of the pending litigation.  Miller Decl., at ¶¶ 9-10.  On February 16, 2011, Clark and Miller met with Palmateer at Miller's office.  *Id.* at ¶ 13. Before Clark arrived, Miller and Palmateer discussed generally for approximately twenty minutes the pending litigation,

including the procedural history, terms of engagement, and the Defendants'
amenability to settlement and their settlement strategy. *Id*. at ¶ 15. Pursuant to both
Clark's and Miller's averments, when Clark arrived, the conversation continued for
another sixty minutes or so in which they, particularly Clark, shared confidential and
privileged information that encompassed

> a detailed analysis of the overall case including the subject drawings Mr.
> Zalewski was using to support his claims and the architectural drawings
> of the allegedly infringing home built by Shelroc and Capital Framing.
> Mr. Clark walked Mr. Palmateer through various aspects of both
> drawings, comparing and contrasting elements of both. Mr. Palmateer
> was actively involved in the discussion, asking questions and offering his
> opinions and advice.

Miller Decl., at ¶ 17; Clark Decl., at ¶ 3.

Clark and Miller represent that the candid conversations were not one-sided and that
Palmateer offered his opinion and advice on a range of related subject matters. Miller
at ¶ 17; Clark Decl., at ¶ 9. Additionally, Clark and Miller declare that their discussion
with Palmateer included terms such as what Defendants might be willing to offer to
settle the litigation, including amounts. Miller Decl., at ¶ 19; Clark Decl., at ¶ 3.[5]

Contrariwise, Palmateer refutes that either Clark or Miller shared privileged
communication with him and he vehemently denies that the Defendants shared terms

---

[5] Out of an abundance of caution, the Defendants did not initially share with the Court the
actual conversation between Clark, Miller, and Palmateer for fear that doing so could inadvertently
waive the attorney-client privilege. Dkt. No. 20-3, Joseph M. Clark Decl., dated Nov. 16, 2011, at
¶ 6. However, as previously noted, this Court subsequently directed affidavits revealing the
purported privileged communication. *See supra* note 4.

of settlement with him: "Our discussions did not even remotely approach 'detailed,' and neither Messrs. Clark nor Miller disclosed confidential information to me. . . . While they inquired as to my thoughts on settlement and I offered preliminary observations, they did not disclose to me their strategy or amenability to settlement." Dkt. No. 25-3, Lee Palmateer, Esq., Decl., at ¶¶ 12-13.  Palmateer confirms that he met with Clark and Miller for at least sixty minutes, discussed the nature and procedural history of the pending case, the factual allegations against Clark to which he gave "preliminary observations," and yet asserts that he learned nothing that could be considered harmful to the Defendants' case.  *Id*. at ¶¶ 6, 11, &16.  Notwithstanding Clark's and Miller's meeting with Palmateer, they decided not to retain him and hired, instead, the law firm of Harris Beach, James R. Muldoon, Esq., of Counsel.  Miller Decl., at ¶ 22.

On August 2, 2011, the Honorable Gary L. Sharpe, now Chief United States District Judge, issued a memorandum-decision and order dismissing the second amended complaint for failing to meet the pleading requirements under FED. R. CIV. P. 8, granting Plaintiffs leave to file a third amended complaint, and extending to the defendants an opportunity to renew or supplement their motions should a third amended complaint be filed timely.  Case No. 1:10-CV-876, Dkt. No. 133, mem.-dec. & order.  Approximately two weeks thereafter, on August 18, 2011, Attorney Delain

filed a letter-motion seeking to withdraw as Plaintiffs' Counsel, Dkt. No. 135, and

Attorney Palmateer filed a notice of appearance on behalf of the Plaintiffs, Dkt. No.

134.  *See also* Dkt. No. 136, order, dated Aug. 19, 2011.  Until this point, Palmateer

had not represented the Plaintiffs on any matter nor in any manner.

On September 1, 2011, Plaintiffs filed the third amended complaint wherein the

Defendants above, among others, remained as parties.  Dkt. No. 138, third am. compl.,

Count VI, ¶¶ 169-92.  The Defendants complained that this third amended complaint

contained new factual allegations that included information Defendants had disclosed

in confidence to Palmateer and had not appeared in previous iterations of the

complaint.  Such information includes the role of Clark Realty, LLC, in the purchase

of lot and eventual sale of the house located at 4186 Albany Street and that building

plans prepared by David Hopper were acquired as a part of the purchase of this lot.

Case No. 1:11-CV-1159,  Miller Decl., at ¶ 36.

According to the Defendants, immediately after the third amended complaint

was filed, Defendants' current Attorney, James Muldoon, contacted Palmateer about

a conflict regarding his representation of Plaintiffs and may have asked him to

withdraw as counsel. Dkt. No. 20-21, James Muldoon, Esq., Decl., dated Nov. 18,

2011, at ¶¶ 8-10.  Disagreeing that there is a conflict and refusing to withdraw from

that litigation, instead, on September 27, 2011, Plaintiffs filed a voluntary dismissal

without prejudice against our Defendants, Case No. 1:10-CV-876, Dkt. No. 143, which was granted by Judge Sharpe, Dkt. No. 144; concurrently, Plaintiffs commenced our current action.[6]

## C.  Case No. 1:11-CV-1159

The allegations rendered against the Defendants in the prior case's third amended complaint are repeated nearly verbatim in our Complaint.  Case No. 1:11-CV-1159, Dkt. No. 1, Compl., dated Sept. 27, 2011.  Unsurprisingly, the Defendants contend that the new allegations are based upon information Defendants discussed in confidence with Palmateer during "their prospective attorney-client relationship."  In response to the Complaint, Defendants filed an Answer with Counterclaims.  Dkt. No. 11, Answer, dated Oct. 28, 2011.  Essentially, the Defendants are attempting to turn the tables and assert that it is the Plaintiffs who infringed their copyright of their design of 4186 Albany Street, Albany, New York and, accordingly, seek to have Plaintiffs' copyright design declared invalid and unenforceable.  *Id*. at ¶¶ 77-111.  Moreover, the crux of Defendants' Third Counterclaim are the facts surrounding the February 2011 meeting between Palmateer, Clark, and Miller and the purported and potential use of that confidential information against the Defendants in this current action.  *Id*. at ¶¶

---

[6]    Shortly thereafter, several dispositive motions were filed against the third amended complaint by the remaining defendants in the original action. Case No. 1:10-CV-876, Dkt. Nos. 146, 149, 151, 156, & 158-60.  On February 22, 2012, Judge Sharpe issued a memorandum-decision and order dismissing claims against defendants Cillis, DeRaven, and Sofia.  Dkt. No. 168.

111-29.  For the Defendants, these facts evolve into a claim of bad faith, abuse of

process, and unfair competition.

After holding a Conference on November 8, 2011, this Court issued an Order

granting Defendants permission to file this Motion to Disqualify and further stayed all

proceedings pending a decision on the Motion.[7]  Dkt. No. 18, Text Order, dated Nov.

8, 2011.

## II.  APPLICABLE LAW

Defendants' central theme in filing this Motion is that they had entered into a

prospective attorney-client relationship with Palmateer when they discussed details

about their defense in the earlier, related lawsuit initiated by the Plaintiffs.  As noted

above, the Defendants assert that Palmateer "now represents Plaintiffs on virtually

identical claims against the Defendants."  Dkt. No. 20-1, Defs.' Mem. of Law at p. 2.

Defendants argue that Palmateer should be disqualified from representing the Plaintiffs

based upon his receipt of privileged, confidential communication from them during an

attorney-client relationship, albeit brief, that occurred prior to the commencement of

the present lawsuit.  They exclaim that Palmateer's possession of this sensitive and

relevant information, which was shared with him in confidence, will visit substantial

---

[7]  In Case No. 1:10-CV-876, on December 22, 2011, Judge Sharpe issued a Text Notice
"stay[ing] its decision in light of the pending motion to disqualify plaintiffs counsel . . . in the related
case, *Zalewski v. Shelroc Homes, LLC*, 11-cv-1159."  That stay has been lifted.  Dkt. No. 168, mem.-
dec. & order, dated Feb. 22, 2012, at p. 12.

harm upon them and deliver an unfair advantage to Plaintiffs.  *See generally* Dkt. Nos. 20-1, Defs.' Mem. of Law, & 26, Defs.' Reply Mem. of Law.  Although Palmateer agrees that he met with Clark and Miller and that a conversation ensued regarding pending litigation, he vehemently disputes the content and ambit of those discussions. In his view, no confidential information was conveyed to him, and the information that was shared would not cause substantial harm to the Defendants.  *See generally*, Dkt. No. 25, Pls.' Mem. of Law.

A motion to disqualify an attorney is within the broad discretion of the court. *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994); *Cheng v. GAF Corp.*, 631 F.2d 1052, 1055 (2d Cir.) (noting that a court's ruling will not be overturned absent an abuse of discretion determination), *judgment vacated on other grounds*, 450 U.S. 903 (1981).  Since disqualification may impose a serious impact on a party's right to an attorney of his choice, it should only be imposed when continued representation may pose a significant risk of taint upon the trial. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981).  The objective of a disqualification rule is to "preserve the integrity of the adversary process." *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 18 (2d Cir. 1986) (quoting *Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).  Generally speaking, motions to disqualify are viewed with disfavor and the party seeking disqualification must meet a high standard of proof

before disqualification will be granted. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (observing that there is "a particularly trenchant reason for requiring a high standard of proof"); *Human Elec., Inc. v. Emerson Radio Corp.*, 375 F. Supp. 2d 102, 105 (N.D.N.Y. 2004); *United States v. Salvagno*, 2003 WL 21939629, at *5 (N.D.N.Y. Mar. 4, 2003).  However, "in the disqualification situation, any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F2d 568, 571 (2d Cir. 1975) (citations omitted).

In deciding a motion to disqualify, courts often seek guidance from the American Bar Association (ABA) and state disciplinary rules, though "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132-33 (2d Cir. 2005) (*citing Bd. of Educ. v. Nyquist*, 590 F.2d at 1246).  We must always remember that the standard of professional conduct in federal courts is a matter of federal law. *Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 305 (E.D.N.Y. 2005) (citing *In re Snyder*, 472 U.S. 634, 645 n. 6 (1985) ("Federal courts admit and suspend attorneys as an exercise of their inherent power; the standards imposed are a matter of federal law.").  Accordingly, federal courts are guided, but not bound, by the State's Code of Professional Conduct, and yet courts look to the Code, and in some instances even seek guidance from state common law,

in determining disqualification motions.  In that respect, the Court notes that New York adopted the Model Rules of Professional Conduct, effective April 1, 2009.  The Model Rules, in most respects, do not differ significantly from the previous standards set forth in the Model Code of Professional Responsibility.[8]

New York Code of Professional Conduct Rule 1.18 provides in pertinent part the following:

> a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a "prospective client." (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.  (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). . . . (d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if: (1) both the affected client and the prospective client have given informed consent, confirmed in writing; or (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client . . . .

N.Y. COMP. CODES R. & REGS. tit. 22, §1200.

## III. ANALYSIS

---

[8] For a comparison of the two standards, see Roy Simon, <u>Comparing the New NY Rules of Professional Conduct To the NY Code of Professional Responsibility</u>, available at www.nysba.org.

Defendants assert that at the time they shared confidential information with Palmateer concerning the facts and issues prevalent in the earlier, related litigation, they were prospective clients of Palmateer.   Because of their legal status as prospective clients, as well as noting further that they do not give their consent for Palmateer to serve as Plaintiffs' Counsel, Defendants contend that Palmateer should not be allowed to continue the representation of clients with interests materially adverse to those of the Defendants in the same or substantially related matter because he received information from them that could be significantly harmful to them. Palmateer denies that the Defendants provided him with confidential information, challenges the purported confidential nature of the conversation as argued by Defendants, disputes the accuracy of Defendants' version of their discussion, and minimizes the materially adverse impact and substantial harm to the Defendants. While Defendants claim that their communications were comprehensive and confidential, Palmateer maintains that whatever was shared with him was preliminary and inconsequential.

The fundamental elements of Rule 1.18 to which this Court must contend with are (1) the existence of a prospective client, (2) the sharing of information with a lawyer, (3) whether the lawyer's current client has interests materially adverse to the prospective client in the same or substantially related matter, and, (4) disclosure of that

information could be significantly harmful to the prospective client.  For the most part, only a combination of two of the above mentioned elements has rendered this analysis toilsome.

A party who discusses with a lawyer the "possibility of forming a client-lawyer relation with respect to a matter is a prospective client."  Rule 1.18(a).  Plaintiffs do not seriously challenge the proposition that the Defendants were prospective clients within the construct of this Rule.   Both Clark and Miller aver that they were interviewing lawyers with the anticipation of retaining one of them to serve as their counsel in the litigation *Zalweski et. al. v. T.P. Builders, Inc., et al.*, 10-CV-876, and Palmateer was advised of their expectation before and during the February 16, 2011 meeting.  Palmateer had prepared for that meeting, reviewed the case docket, presented Clark and Miller with a proposed retainer agreement, and discussed the cost of litigation with them.  Thus, this element is not dispute.  It is also patently obvious that Palmateer's current clients' interests as the Plaintiffs are materially adverse to those of the Defendants in the same or substantially related matter.  The Court's principal travail has been over the nature of the information disseminated to Palmateer by Clark and Miller and whether their revelations would be significantly harmful to the Defendants.

Clark and Miller interchangeably proffer to the Court that they discussed in

detail the nature and procedural aspects of the original litigation, their theories of defense, and litigation strategies.  With regard to the theory of their defense, they state that they pointed out each distinction between the Plaintiffs' and their architectural designs to Palmateer in debunking that there was any infringement, expostulated on the strength and weaknesses of the claims and their defenses thereto, and further extrapolated upon their views on a settlement strategy.  In Defendants' considered view, that discussion was nothing short of an attorney-client privileged communication and they expected Palmateer to keep their discussions privileged and confidential, without fearing that someday such would ever be revealed or recited against them.  It was much to their surprise when Palmateer filed a notice of appearance on behalf of the Plaintiffs in the previous case and much to their chagrin when the third amended complaint and the Complaint in this matter recited details that they thought were shared in confidence during the February 16, 2011 meeting, which had not been pled in the original complaint.  In supporting this contention, Defendants point to the following:

> Upon information and belief, J. Clark and Shelroc purchased a building lot at 4186 Albany Street, Albany, NY on or about January 17, 2007 and, as part of the purchase transaction, obtained copies of certain building plans that had been prepared for the seller by David Hopper (hereinafter the "Hopper's Infringing Drawings").

Dkt. No. 1, Compl. at ¶ 23.

****

*-15-*

> Upon information and belief, under the direction and control of J. Clark,
> Shelroc advertised the house and lot for sale in, among other places,
> multiple listing services or the Clark Realty , LLC's website . . .

*Id*. at ¶ 27.

Reading these and other facts recited in the third amended complaint and our current

Complaint have heightened Defendants' concern that other details of their discussion

would consequently be used against them in this litigation; realizing that the Plaintiffs'

Counsel knows the Defendants' theories, impressions, and strategies, Defendants feel

that they have been placed at a substantial disadvantage.  Particularly, Clark and Miler

aver that they unveiled to Palmateer what they would be willing to settle for and the

reasons why, and for Palmateer to possess such knowledge while representing

Plaintiffs taints the integrity of this legal process.

Palmateer gainsays all of the Defendants' representations in the strongest terms.

He couches the discussion as basic and introductory with no confidential information,

including settlement strategies, being disclosed to him nor did he learn anything of any

consequence that could conceivably cause any significant harm to the Defendants.  In

addition to disavowing the occurrence and denigrating the importance of the discussion

with Clark and Miller, he pinpoints that much what was added into the third amended

complaint and our Complaint was already gleaned from public records, the case

docket, original complaint, and through Zalewski's independent investigation and

efforts.  *See* Dkt. No. 25-1, James E. Zalewski Decl., dated Dec. 9, 2011, at ¶¶ 7-11.

Palmateer further notes that Defendants publicly revealed aspects as to the lack of

similarity between the two respective designs and floor plans when, on May 2, 2011,

they filed a reply memorandum in support of their motion to dismiss in the original

case, *see* 1:10-CV-875, Dkt. No. 131,[9] which was filed four months before Palmateer

filed a notice of appearance.  If all of this information was already public or eventually

made public by the Defendants themselves, Palmateer argues that it begs the question

as to the confidentiality of the February 2011 meeting and, moreover, as to the degree

of harm that could conceivably be visited upon the Defendants.

The Plaintiffs draw the Court's attention to a precedent from the District of New

Jersey which has analogous components to our discussion.  In *ADP, Inc. v. PMJ*

*Enters., LLC*, 2007 WL 836658 (D.N.J. Mar. 14, 2007), the plaintiff moved to

disqualify defendant's law firm.  Sudha Kantor, a principal of the plaintiff, spoke,

albeit briefly, with a partner of the law firm, Edward Kiel, to represent them in a suit

against the defendant.  Kantor alleged that she explained the nature of the business and

the dispute between the two parties, discussed the factual basis of an anticipatory

counterclaim, disclosed the plaintiff's litigation strategy, and revealed plaintiff's

---

[9]  The Defendants' reply memorandum of law in the initial case raises that "there is no substantial similarity between the design of 4186 Albany Street and DRA217."  1:10-CV-876, Dkt. No. 131, at pp. i, & 6-8.

settlement position and strategy.  *Id*. at *1-2.  Kiel did not recall those details, particularly regarding settlement strategy.  Eventually this attorney ascertained that his firm was already representing the defendant on other matters and that they would continue representing the defendant while the firm attempted to build an ethic screen around Kiel.  Much like our case, this case involved Rule 1.18.

Other than finding that plaintiff and Kiel's firm had a prospective client relationship, the Honorable Ronald Hedges, United Stated Magistrate Judge, determined that all of the other factors weighed against granting the motion to disqualify.  Judge Hedges found discussions regarding the nature of the business, the history of the dispute, the anticipation of a counterclaim, and, because settlement had been ongoing, settlement strategy not confidential and thus did not constitute significantly harmful information.  *Id*. at *5.  While this Court finds persuasive Judge Hedges's view that records that are already public and the history of the dispute are not confidential and thus would not pose any significant harm, this Court departs from the court's analysis when extended to settlement strategies, especially when the issue for us is not that Defendants are interested in settlement or have commenced engaging in such discussion, but the potential exposure of the specifics of their strategy in reaching an agreement.  This Court also extends this departure to the notion of discussing strengths and weaknesses of anticipatory counterclaims.

Palmateer's vehement refutation that, at no time, did Clark or Miller disclose their settlement strategy, and, moreover, that Clark's and Miller's asseverations are contrived, initially gave this Court considerable pause on the substantial issue of significant harm. Judging the credibility of the particular affiants was difficult as well. Additionally, Palmateer exclaims that he did not share any of their communications with his current client, which Zalewski affirms.  Palmateer wants this Court to also understand that settlement is an evolutionary and fluid process so that a party's stance at one moment is not controlling nor critical at another stage of the litigation, thus rather insignificant under Rule 1.18.  Yet, the turning point for the Court is not the accuracy of what was previously demanded or offered or even a possible misrepresentation of the settlement history, but rather Clark's and Miller's averments that they shared with Palmateer what they would consider to be a reasonable settlement, solicited his views on what would be a reasonable settlement, and gave the reasons why they were prepared to move settlement in a particular direction.  The impact of this exposure may be prospective but, contrary to Palmateer's perspective as to settlement implications, knowing another party's undisclosed settlement strategy is significant in any event.  The Court agrees that there is always posturing during settlement, but knowing beforehand a party's bottom line, even if it changes over time, on settlement could be ruinous for that particular party.  Possessing all of these cards

can serve as an unfair advantage in the process and could ultimately control the great stakes ahead.

Probably more disquieting is that Defendants have gone on the offensive and filed a Counterclaim against the Plaintiffs alleging copyright misuse, abuse of process and unfair competition.  Dkt. No. 11, Defs.' Answer with Counterclaims at ¶¶ 112-29 (Third Counterclaim).  At the heart of this Counterclaim is Palmateer's interaction with Clark and Miller in February 2011, and how they made statements to Palmateer with the expectation that they would be deemed and remain confidential for the purpose of receiving legal advice and, indeed received, in return, legal opinions with regard to the merit of Plaintiffs' initial lawsuit and legal strategy.  *Id.* at ¶¶ 116-20.  By filing the third amended complaint and this Complaint, Defendants contend that, in addition to the claims of copyright misuse, abuse of process, and unfair competition, Plaintiffs violated Federal Rules of Civil Procedure 11 and 37 and 28 U.S.C. § 1927.  *Id.* at ¶¶ 123-29.  While this Court is not prepared to opine on the merits of this Counterclaim, this Court recognizes that either the prosecution of the Counterclaim or the defense thereof invokes the advocate-witness rule, should Palmateer continues as Plaintiffs' Counsel and creates quite a predicament for him.  *Ramchair v. Conway*, 601 F.3d 66, 74 (2d Cir. 2010) (noting that an attorney should withdraw if it appears that he may have to testify on behalf of his client) (citations omitted); *Nelson v. Ulster Cnty*, 2007

WL 2288053, at *5-6 (N.D.N.Y. Aug. 7, 2007) (discussing the advocate-witness rule).
With regard to the Counterclaim, the Defendants would need to call Palmateer as a
witness to support these claims, or the Plaintiffs would have to call Palmateer to
controvert these allegations. We cannot ignore that Palmateer has a duty to represent
the Plaintiffs zealously and to withhold information, even if gleaned from the
discussion with Clark and Miller, may be considered a breach of that solemn
responsibility. Had something confidential been disclosed during that discussion, but
recalled at a later juncture and possibly helpful to the Plaintiffs, Palmateer may have
to reveal it to the Plaintiffs. Yet, conversely, to reveal the discussion in any matter
may be a betrayal of Defendants' expectation of confidentiality, thus creating a
dilemma for Palmateer and conceivably for the trial court. Nonetheless, Palmateer
cannot avoid being drawn into this litigation in ways not previously contemplated. In
this respect, the litigation would be tainted and the integrity of the adversarial process
may be unduly compromised.

Key to this decision is that the Court must maintain the integrity of the adversary
process. It would be an unfair disadvantage for Defendants to be confronted by an
attorney whom they believe possesses intimate knowledge of their views and
impressions of this litigation, even though that attorney professes that he has no
knowledge nor recalls any, and, if he did, he would not need it or use it in a way to

either alarm or harm Defendants.  *Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 24 (N.D.N.Y. 2002) (quoting *Bd. of Ed. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) for the proposition that disqualification is warranted "where an attorney is potentially in a position to unfairly advantage his current client through the use of privileged information").  Receiving Defendants' thoughts on the differences between the designs and the strengths and weaknesses of the parties' respective positions would generate an unfair opportunity to rebut Defendants during the course of this litigation.  Just having Defendants' opinions and impression of even public documents and facts would establish privileged communication and if revealed, in any form or fashion, would constitute significant harm.  *Bank Hapoalim B.M. v. WestLB AG*, 82 A.D.3d 433 (N.Y. App. Div. 1st Dep't 2001) (finding that the "defendants' description of the matters, coupled with the circumstances surrounding the meeting, give rise to a reasonable inference that confidences were revealed").  Notwithstanding Palmateer's unwillingness to acknowledge it, he is potentially in a position to use privileged communication, and it would be arduous to extract or erase it from one's mind.  *Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d at 1246 (observing that disqualification has been ordered "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation"); *Pacheco Ross Architects, P.C. v. Mitchell Assocs.*

*Architects*, 2009 WL 1514482, at *2 (N.D.N.Y. May 29, 2009) (citing *Allegaret v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977) for the legal proposition that if a substantial relationship has been established, the receipt of confidential information will be presumed).

When in doubt on a motion such as this, the Second Circuit urges courts to lean in favor of disqualification. *Hull v. Celanese*, 513 F.2d at 571. This Court did not take this task lightly when balancing Plaintiffs' right to the counsel of their choosing against "the need to maintain the highest standard of profession."[10] *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010); *Gov't of India v. Cook Indus. Inc.*, 590 F.2d 737, 739 (2d Cir. 1978). In the final analysis, under these facts, and in order to preserve the integrity of the adversary process, this Court exercises its authority to disqualify Palmateer as Plaintiffs' attorney regarding only this litigation. *Murray v. Met. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (citing *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)).

Accordingly, it is hereby

**ORDERED**, that Defendants' Motion to Disqualify Plaintiffs' Counsel, Dkt.

---

[10] By disqualifying Attorney Lee Palmateer from this action, this Court does not suggest, in any form or fashion, that he has acted unethically or has done anything wrong.

*-23-*

No. 20, is **granted** and Attorney Lee Palmateer shall be terminated from the case docket as Plaintiffs' Counsel; and it is further

**ORDERED**, that, to the extent that it is accepted that he has not already, Attorney Palmateer shall not disclose any of the discussions he may have had with Joseph Clark and Phillip Miller with Plaintiffs or Plaintiffs' new counsel; and it is further

**ORDERED**, that the Plaintiffs shall retain new counsel within thirty (30) days of the filing date of this Order; and it is further

**ORDERED**, that the Stay shall remain in effect until such time Plaintiffs has retained new counsel and the Court has convened a Rule 16 Conference.

**IT IS SO ORDERED**.

March 6, 2012
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge